# UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

FILED
08 JUN 23 AM 11:59
DISTRICT OF CALIFORNIA
DEPUTY

IN THE MATTER OF THE SEARCH OF )
)
)
**Storage Locker** )
**Wackenhut Transpiration Division** )
**311 Athey Avenu** )
**San Diego, California 92173** )
)

Case No. ~~08-cr-1969~~

'08 MJ 1932

## APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

I Lucia Cabral-DeArmas being duly sworn depose and say:

I am a(n) Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement Office of Investigations and have reason to believe that ___ on the person of or x on the property or premises known as

Described in Attachment "A".

in the Southern District of California, there is now concealed a certain person or property, namely

Described in Attachment "B".

which is property that constitutes evidence of the commission of a criminal offense concerning a
violation of Title 8 United States Code, Section(s) 1324, and
violation of Title ____ United States Code, Section(s) ____, and
violation of Title ____ United States Code, Section(s) ____.

The facts to support a finding of Probable Cause are as follows:

Described in supporting affidavit

Continued on the attached sheets and made part thereof.
X Yes ___ No

Signature of Affiant

Sworn to before me, and subscribed in my presence

6-20-08 @ 3:45PM at San Diego, California
Date/Time issued City and State

**NITA L. STORMES**
**U.S. MAGISTRATE JUDGE**
Name and Title of Judicial Officer

Signature of Judicial Officer

AFFIDAVIT

STATE OF CALIFORNIA )
) ss
SOUTHERN DISTRICT OF CALIFORNIA )

## PRELIMINARY MATTERS

I, Lucia Cabral-DeArmas, having been duly sworn, do depose and state as follows:

1. I am a Special Agent ("SA") with the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") Office of Investigations ("OI"),and am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), empowered by the law to conduct investigations of, and to make arrests for, the offenses enumerated in 18 U.S.C. § 2516.

2. I have been a Special Agent with ICE OI since August of 2004 and have been assigned to work Alien Smuggling/Trafficking investigations. As an ICE SA I have received specialized training related to criminal violations of Title 8, including Courses in laws pertaining to immigration and smuggling, customs law, the investigation of smuggling operations and organizations, financial investigations, money laundering and wire fraud, fraud investigation, the make-up and operation of criminal groups and organizations, and human trafficking/ smuggling laws and investigations. Prior to my employment with ICE, I was a Border Patrol Agent with the United States Department of Justice for approximately twelve years.

3. Based on my training and experience I am familiar with methods used by alien smugglers in their operations. I have learned that it is common for individuals involved in alien smuggling to maintain paperwork detailing their involvement with co-conspirator to include ledgers identifying amounts payable and phone lists identifying co-conspirators. The alien smugglers often rely on others to recruit, guide, transport and stage illegal aliens. Such details are oftentimes memorialized in hand written notations, and documents which are stored in personally controlled locations.

## INTRODUCTION

4. On or about May 30, 2008, Border Patrol Agents received information from Transportation Officer Vincent Reyes ("Reyes"), an employee of Wackenhut Privet Security Company contracted by the Department of Homeland Security to transport detainees held in the custody of Customs and Border Protection. Reyes reported that he believed Wackenhut Sergeant Christopher Saint Lucero ("Saint") was involved in alien smuggling. Border Patrol Agents assigned to the San Diego Sector Smuggling Interdiction Group ("SIG") set up an undercover operation in order to confirm if in fact Sergeant Christopher Saint Lucero was involved in alien smuggling.

5. On June 01, 2008, SIG Border Patrol Agents arrested Saint after he release d an illegal alien from El Salvador who was in custody in order to smuggle him to Los Angeles, California for a fee.

6. On June 16, 2008, the affiant spoke with Edgar Anthony Cabusora ("Cabusora"), Wackenhut Operations Lieutenant, Transportation Division, who confirmed that

Saint is a Wackenhut Transportation Sergeant, and that Saint has been issued usage of personal locker. Cabusora said he and Saints are the only two officers to be issued lockers. Cabusora said it is common knowledge in the Wackenhut office that Saint resides in Tijuana, Baja California, Mexico and stores many of his personal items in his locker.

## **LOCATION TO BE SEARCHED:**

7. Christopher Saint Lucero, is identified as a Hispanic male, born October 12, 1973, 6'2", approximately 200, brown eyes and brown hair. Saint, is naturalized United States citizen born in, Encenada, Baja California, Mexico. Saint has been assigned a personal locker by his employer, Wackenhut Privet Security Company, Transportation Division, a private company contracted by the Department of Homeland Security to transport detainees held by the Customs and Border Protection. Cabasora Identified the locker belonging to Saint KCD I believe based on the evidence gathered during this investigation coupled with my training and experience that Saint may be maintaining documents in his storage locker evidencing his involvement in alien smuggling. The documents include, official Border Patrol documents detailing names of illegal aliens that should have been deported, notes, phone lists, copies of reports related to arrests and/or seizures of illegal aliens and vehicles, printouts of names of associates. I submit that the facts contained in the numbered paragraphs below are accurate, and that they demonstrate that there is probable cause to believe that the aforementioned, storage locker issued by Saint's employer, Wackenhut Privet Security Company, Transportation Davison, contains evidence of violations of Title 8 United States Code, Section 1324 (a)(1)(A)(v)(I), Conspiracy to transport aliens

within the United States. The location to be searched is described more fully in Attachment A, which is hereby incorporated by reference.

**PROPERTY OR ITEMS TO BE SEIZED:**

8. Documents, notes, ledgers, reports and address books identifying other known and unknown criminal associates.

9. Since this affidavit is being submitted for the limited purpose of securing a search warrant to seize and review the contents of Saint's work storage locker, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts necessary to establish the foundation pursuant to the issuance of a search warrant for the content of the storage locker, as described. See Attachment B for further details, which is hereby incorporated by reference.

**SPECIFIC FACTS:**

10. On or about May 30, 2008, Border Patrol Agents received information from Wackenhut Corporation Transportation Officer Vincent Reyes that he believed Wackenhut Sergeant Christopher Saint Lucero ("Saint") was involved in alien smuggling. Border Patrol Agents assigned to the San Diego Sector Smuggling Interdiction Group ("SIG") set up an undercover operation in order to confirm if in fact Sergeant Christopher Saint Lucero was involved in alien smuggling.

11. On or about June 01, 2008, SIG Agent Manuel Ortiz ("Agent Ortiz") who was posing as an illegal alien was placed in a holding cell at the Chula Vista Border

Patrol Station, along with William Edgardo Romero Estrada ("Romero") an illegal alien from El Salvador who was recruited by Border Patrol Agents to assist in the undercover operation. Both Agent Ortiz and Romero were processed for voluntary return to Mexico. On the same day at approximately 11:00 a.m., Saint and his partner, Transportation Officer Hayes ("Hayes") arrived in a Wackenhut bus at the Chula Vista Border Patrol Station to pick up the detainees who were being returned to Mexico voluntarily. Agent Ortiz and Romero were among the detainees who were loaded in the bus to be transported to the international border near the San Ysidro Port of Entry to be returned to Mexico. At the international border before detainees are allowed to enter into Mexico, Mexican Immigration Officers question the detainees about their citizenship. Detainees who are not Mexican Citizens are returned to the Wackenhut Transportation Officers.

12.. Agent Ortiz and Romero were determined not to be citizens of Mexico and were rejected by the Mexican Immigration Officers and returned to Saint and Hayes. As Saint was placing Agent Ortiz and Romero in hand cuffs, Agent Ortiz asked Saint in Spanish to give them a break. Saint replied in Spanish and said "Give you a break? Do you have money?" As Saint escorted Agent Ortiz and Romero back onto the bus he asked them where they were going. Agent Ortiz and Romero replied that they were going to Los Angels, California. Saint again asked if they had any money. Saint then negotiated with Agent Ortiz and Romero and agreed to charge Agent Ortiz two thousand dollars ("$2000.00") and Romero three thousand dollars ("$3000.00") to smuggle them to Los Angeles, California. Once the price was agreed upon, Agent Ortiz saw Saint use a cellular phone to make a phone call.

13. Agent Ortiz and Romero were transported back to the Chula Vista Border Patrol Station compound. As Hayes entered the Chula Vista Border Patrol compound he

was instructed by Saint to pull the bus over near an area were gas pumps are located. Hayes questioned Saint and asked why they were pulling over instead of taking the detainees directly to the Chula Vista processing office. Saint told Hayes he was going to personally transport Agent Ortiz and Romero to the processing office in a Wackenhut Jeep. At that time Wackenhut Officer Manley Lamont Smith ("Smith") pulled up alongside the bus. Saint then dismissed Hayes and told him to go to lunch. Once Hayes departed the area, Saint ordered Agent Ortiz and Romero to exit the bus and get in the Jeep. As Agent Ortiz and Romero boarded the Jeep, Agent Ortiz overheard Saint tell Smith in English, "five thousand bucks." Agent Ortiz heard Smith reply, "I have my car here, I can take them or I can stash them until later." Saint got into the passenger seat of the jeep and told Smith to drive the aliens to Smith's 2003 black Jaguar. Once at Smith's car, however, Saint decided not to leave the detainees in the Jaguar and told Smith he was going to drop them off himself. Saint asked Smith to call him later. Smith agreed with Saint and drove to the Wackenhut office located in the same compound as the Chula Vista Border Patrol Station. Smith exited the Jeep and Saint got in the driver's seat and drove Agent Ortiz and Romero to Howard Lane Neighborhood Park located on Dairy Mart Road and Beyer Boulevard, in San Diego, California.

14. On the way to the park, Saint told Agent Ortiz and Romero in Spanish that he was going to call his brother-in-law to pick them up. If his brother-in –law was unable to pick them up he would return within one to five hours to pick them up. Approximately an hour later, after dropping Agent Ortiz and Romero off at the park, Saint returned to pick them up in a black 2003 Toyota Tundra Pick-Up Truck bearing California license plate 8J45800. Saint pulled into the park and

motioned with his hand for Agent Ortiz and Romero to get in his vehicle. Agent Ortiz and Romero did as they were told and got in Saint's vehicle. However, before Saint could drive away he was arrested by Border Patrol Agents.

15. Saint was transported back to the Chula Vista Border Patrol SIG Office to be interviewed and processed. During a post Miranda statement, Saint admitted that he dropped of Agent Ortiz and Romero who he believed to be illegal aliens at a park. Saint also admitted that he intended to smuggle Agent Ortiz and Romero to Los Angeles, California for a fee. Saint informed agents that Smith knew and was involved in the smuggling plans. Border Patrol Agents walked over to the Wackenhut Office and arrested Smith. Border Patrol Agents also seized Smiths vehicle, a 2003 Jaguar S Type bearing California License Plate number 5ZDJ068.

## CONCLUSION:

16. It is my experience that alien smugglers routinely keep documents that can show relationships between themselves and other co-conspirators. It is common to find documents that can show a person's part in the conspiracy between subjects. It is very common to find telephone numbers and/or address books or other records that indicate the locations of other co-conspirators, or memorialize past transactions in which two or more subjects have participated together. Such other records include official government records and notices, personal telephone address books, receipts, telephone bills, photographs, cellular telephone records and bills, written notes and memos. Based on the foregoing, your affiant believes probable cause exists that items to be seized from Saint's storage locker contains records and data that constitutes evidence of the commission of an offense under

Title 8 United States Code, Section 1324, Alien smuggling; contraband and fruits of such offenses; and property designed and intended for use and which had been used as the means of committing such offenses. Such records or information is more particularly described in Attachment B to this Application and Affidavit for Search Warrant.

**Lucia Cabral-DeArmas**
Special Agent
U. S. Department of Homeland Security
Immigration and Customs Enforcement
Office of Investigations

Subscribed and sworn to before me on this 20th day of June 2008.

U.S. Magistrate Judge

**ATTACHMENT A**

Description of work, storage locker located in the office area of the Wackenhut Transportation Division Office located at 311 Athey, San Diego, California, 92173.

Saint's locker is one of two dark gray lockers located in the main office area of the Wackenhut office as depicted on the attached photographs.

SGT. Saint's locker is located on the left as you face the blue exit door JCD

# ATTACHMENT B

1. Items to be seized from the target storage locker described in Attachment A:

   a. Official documents and reports;

      1. Notes, papers, and/or ledgers specifying amounts payable, or identifying other possible co-conspirators or associates.


AMERICAN HERITAGE
DICTIONARY
Saint's
locker




Saint's
locker


SERIES 5200
US

